UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Peterus Beukes, Stephanus De Klerk, Cornelius Engelbrecht, and Gabriel Du Plessis, on behalf of themselves and others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>Chad J. Boehnke and Boehnke Waste Handling, LLC,<br><br>　　　　　　　　　　Defendants. | Case No. 24-cv-828 (JWB/DLM)<br><br>**ORDER GRANTING MOTION FOR CONDITIONAL CERTIFICATION AND FOR NOTICE TO PUTATIVE CLASSMEMBERS** |

Plaintiffs are laborers. Each of them worked for Defendant Boehnke Waste Handling, LLC ("Boehnke Waste") in the recent past. Defendant Chad J. Boehnke is one of Boehnke Waste's principals. Boehnke Waste is in the business of processing manure for farms and ranches throughout the Midwest. Plaintiffs' jobs included pumping, processing, hauling, and spreading that manure. Plaintiffs allege that Boehnke Waste took advantage of their noncitizen, H-2A Temporary Agricultural Worker statuses by underpaying them in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Plaintiffs have moved this Court for an order conditionally certifying a class of similarly-situated workers and approving the provision of notice of this lawsuit to those similarly-situated workers. Defendants oppose Plaintiffs' motion, asserting that a searching inquiry into the facts underlying this matter would demonstrate that: Plaintiffs are not similarly situated to

those they seek to represent; Plaintiffs will not be adequate class representatives; and Plaintiffs' claims will fail on the merits.

The Court held a hearing on this matter on September 5, 2024. Based on the parties' submissions, as well as the arguments presented at hearing, the Court finds Plaintiffs' position well taken and grants their motion for conditional certification. Additionally, the Court approves Plaintiffs' proposed notice with certain adjustments designed to ensure notice is timely received and responded to. As described more fully below, it has long been recognized in this district and throughout the country that conditional certification is not a high bar, and one which Plaintiffs easily clear here. The Court is unpersuaded by Defendants' arguments to the contrary, and declines their invitation to adopt an out-of-circuit framework which would impose a more rigorous analysis at this early stage of litigation. That is not the point of conditional certification, which, at its core, is designed to ensure that putative FLSA collective action members receive early and effective notice of their potential claims.

## BACKGROUND

Plaintiffs Peterus Beukes, Stephanus De Klerk, Gabriel Du Plessis, and Cornelius Englebrecht—on behalf of all other similarly situated workers—brought this action against their former employer, Boehnke Waste, and one of its principals, Chad J. Boehnke, alleging several employment-related claims. (*See generally* Doc. 19 (operative amended complaint).) Boehnke Waste is a company that contracted with farms and ranches to perform manure management and other related services. (Doc. 25 ¶ 2.) Plaintiffs were part of a federal H-2A nonimmigrant guestworker visa program established by the Immigration

Reform and Control Act of 1986. (Doc. 19 ¶¶ 53-59; *see also* 20 C.F.R. § 655.1 (empowering the Secretary of Labor to "issue regulations regarding the issuance of temporary labor certifications").) This program allows employers to recruit and hire nonimmigrant aliens as temporary agricultural laborers when there are certified shortages of domestic workers. *Id.* § 655.1(a)(1); *see also* U.S. Department of Labor ("DOL"), *H-2A Temporary Agricultural Program*, https://perma.cc/5RXN-QJTY (last visited Oct. 3, 2024). The relevant regulations provide that "H-2A employers may also be subject to the FLSA" and that "[t]he FLSA operates independently of the H-2A program and has specific requirements that address payment of wages, including deductions from wages, the payment of Federal minimum wage and payment of overtime." 20 C.F.R. § 655.135(e).

Plaintiffs claim that Boehnke Waste, an LLC owned by Mr. Boehnke, applied for at least 58 H-2A workers, representing in their applications that the guestworkers would perform agricultural work operating farm equipment at various worksites, many not owned by Mr. Boehnke. Plaintiffs were among these H-2A workers. (*See generally* Doc. 19.) They claim that instead of the agricultural work Boehnke Waste represented its H-2A workers would perform, Boehnke Waste actually sent Plaintiffs to remote dairies, feedlots, ranches, and farms throughout Minnesota, Iowa, South Dakota, and North Dakota to perform mechanical equipment repair, equipment and manure hauling on public roads, manure pumping from holding pits, and construction and demolition projects. (*Id.* ¶¶ 89-100.) Plaintiffs claim that because this work was not agricultural, it was overtime-eligible work[1]

---

[1] Agricultural work is generally exempt from the FLSA's overtime pay requirements. *See* 29 U.S.C. § 213(b)(13).

3

for which they were owed overtime pay. (*Id.* ¶¶ 140-45.) Additionally, Plaintiffs allege that they were not paid for their compensable time traveling to, from, and between worksites and the company's Minnesota headquarters during normal working hours.[2] (*Id.* ¶¶ 131-35.)

As this federal action got underway, the Court held a Rule 16 pretrial conference and set a limited pretrial scheduling order to govern the parties' limited written discovery. (Doc. 27.) Since that time, three new members—Abram Carl Meeding, Danie Johannes Smith, and Johannes Jacobus—have filed notices seeking to opt in to this lawsuit. (Docs. 28, 29.)

Plaintiffs filed their current motion seeking conditional certification on August 22, 2024. (Docs. 30 (Plaintiffs' motion), 32 (Plaintiffs' memorandum), 33 (Plaintiffs' Murray declaration with exhibits).) They ask the Court to order conditional certification of a collective action, authorize notice to putative members through the most expedient media, require Defendants to post the approved notice in housing locations occupied by potential collective members, order Defendants to provide a list of collective members with names, addresses, telephone numbers, emails, and dates of employment, and set an opt-in deadline of 180 days. Plaintiffs propose to define the FLSA collective as: all H-2A workers employed by Boehnke Waste Handling, LLC at any time from 2021 through 2024.

In support of their motion, Plaintiffs submit declarations from three individuals (Danie Smith, Abram Carl Meeding, and Johannes Jacobus), detailing their job

---

[2] Plaintiffs raise a number of additional employment-related claims, but this Court's discussion is limited to the issues relevant to consideration of their FLSA conditional certification motion.

4

descriptions, salaries, duties, and hours. (Docs. 33–33-3.) The declarations aver the following similar facts:

- The three individuals were part of the H-2A program.

- All three worked for Boehnke Waste and Mr. Boehnke in 2022 (Smith, Meeding) or 2023 (Jacobus).

- All three performed the same work: manure handling and related work at various dairies, feedlots, and other sites across several states, most or all of which were not owned by Boehnke Waste or Mr. Boehnke.

- Each individual regularly worked more than 40 hours in a week.

- Despite working these hours, individuals were rarely paid overtime for the hours worked over 40 hours per week.

- Despite extensive traveling between worksites and Boehnke Waste's headquarters in Minnesota, none of the individuals was paid for the hours spent traveling.

- All of the individuals use email and WhatsApp for their most reliable means of communication because they are either regularly traveling for their ongoing work as H-2A guestworkers, or because they have returned to their country of origin outside of the United States.

Plaintiffs argue that these attestations, combined with the allegations in the amended complaint, satisfy their burden to demonstrate that the putative collective members are similarly situated and that the matter should be conditionally certified as a collective.

5

Defendants oppose the motion. (Docs. 36 (Defendants' memorandum), 37 (Defendants' Reynoso declaration with exhibits).) They contend that named plaintiffs are not similarly situated to nor adequate representatives of the putative class. Defendants further assert that the plaintiffs' misclassification and unpaid travel time claims deserve a searching inquiry before any certification decision, conditional or otherwise. Recognizing that most of these arguments are inconsistent with the conditional certification protocol set forth first in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), and adopted by myriad courts since, *see, e.g.*, *Babbitt v. Target Corp.*, No. 20-cv-490 (DWF/ECW), 2023 WL 2540450, at *2-4 (D. Minn. March 16, 2023), *Frank v. Gold'n Plump Poultry, Inc.*, No. 4-cv-1018 (JNE/RLE), 2005 WL 2240336, at *2-5 (D. Minn. Sept. 14, 2005), Defendants ask the Court to abandon the well established, two-step certification protocol and instead use a more rigorous, merits-based inquiry at this stage, as was done in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 439-44 (5th Cir. 2021). Defendants have provided no alternative to Plaintiffs' proposed notice, instead asking the Court to give them more time to meet and confer with Plaintiffs about notice if the Court grants conditional certification.

## ANALYSIS

Under the FLSA, "any one or more employees" may bring a collective action against an employer for uncompensated hours worked for "themselves and other employees similarly situated." 29 U.S.C. § 216(b); *see also Murphy v. Lab. Source, LLC*, No. 19-cv-1929 (ECW), 2022 WL 378142, at *11 (D. Minn. Feb. 8, 2022). The FLSA collective action is a vehicle intended to lower the litigation cost to individual class members who seek to vindicate their right to fair compensation for their labor. *Hoffmann-*

*La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Such collective actions allow a plaintiff who alleges wage and hour violations to assert claims not only for themselves, but also for others similarly situated. *See* 29 U.S.C. §§ 216(b), 256. Unlike class actions brought under Federal Rule of Civil Procedure 23 where members must "opt-out" or be bound by the lawsuit's outcome, the FLSA collective action process is reversed: individuals must "opt-in" to be a part of the lawsuit. *See, e.g.*, *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005). Thus, providing potential plaintiffs with timely notice of the putative collective action is essential to ensure they have a chance to affirmatively "opt-in." *Wang v. Jessy Corp.*, No. 17-cv-5069 (JRT/HB), 2018 WL 5617567, at *2 (D. Minn. Oct. 30, 2018).

The FLSA does not mandate any particular process for providing notice of a collective action, *see* 29 U.S.C. § 216(b), but the Supreme Court has interpreted the statute to grant courts the authority to manage the process, *see Hoffmann-La Roche*, 493 U.S. at 170–71 ("Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties . . . to assure that the task is accomplished in an efficient and proper way"). As a result, federal courts have played a role in "facilitat[ing] the opt-in process by conditionally certifying a class and authorizing court-supervised notice to potential opt-in plaintiffs." *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1082 (D. Minn. 2014); *Wang*, 2018 WL 5617567, at *2 ("The sole consequence of conditional certification is the sending of court-approved written notice to employees.") (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). Such facilitation promotes

efficiency so that there can be "one proceeding of common issues of law and fact arising from the same alleged discriminatory activity," rather than piecemeal lawsuits. *Learing v. Anthem Companies, Inc.*, No. 21-cv-2283 (KMM/JFD), 2022 WL 594378, at *6 (D. Minn. Feb. 28, 2022) (quoting *Hoffmann-La Roche*, 493 U.S. at 170).

A collective action can be conditionally certified if the potential plaintiffs are found similarly situated, and courts typically follow a two-step analysis to make this determination as first set out in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See, e.g.*, *Chin*, 57 F. Supp. 3d at 1082; *Babbitt*, 2023 WL 2540450, at *2. Under this two-step process, a court first determines whether there is a "colorable basis for the[] claim that the putative class members were the victims of a single decision, policy, or plan." *Dege v. Hutchinson Tech., Inc.*, No. 6-cv-3754 (DWF/RLE), 2007 WL 586787, at *1 (D. Minn. Feb. 22, 2007). This means that "a plaintiff must demonstrate that there is some factual nexus that connects [them] to other potential plaintiffs as victims of an unlawful practice," *Olukayode v. UnitedHealth Grp.*, No. 19-cv-1101 (DSD/HB), 2019 WL 11541149, at *2 (D. Minn. Oct. 28, 2019) (quoting *Sjoblom v. Charter Commc'ns, LLC*, 571 F. Supp. 2d 961, 967 (W.D. Wis. 2008)), and that if others who are similarly situated knew of the lawsuit, they would desire to opt in, *see Chin*, 57 F. Supp. 3d at 1090.

At this early stage, the initial burden on a plaintiff is low and courts are lenient. *See Vallone v. CJS Sols. Grp.*, LLC, 437 F. Supp. 3d 687, 689 (D. Minn. 2020) ("The plaintiffs' burden at the first stage is a light one."), *aff'd*, 9 F.4th 861, 2021 WL 3640222 (8th Cir. 2021). If a plaintiff provides "some factual basis beyond the mere averments in their complaint," that suffices because courts recognize there will be minimal evidence for class

8

analysis at this stage. *Frank*, 2005 WL 2240336, at *2; *Chin*, 57 F. Supp. 3d at 1082. This is true even if that factual basis is disputed because the Court's role at this stage is not to make credibility determinations or any findings of fact, *see Quay v. Monarch Healthcare Mgmt. LLC*, No. 21-cv-1796 (JRT/TNL), 2023 WL 4947459, at *3 (D. Minn. Aug. 3, 2023), although courts should not "completely ignore" contrary evidence, *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 942 (D. Minn. 2009). "[C]ourts usually rely on the pleadings and any affidavits submitted by the plaintiff to determine whether to grant conditional certification." *Deutsch v. My Pillow, Inc.*, No. 20-cv-318 (SRN/ECW), 2020 WL 7351556, at *5 (D. Minn. Dec. 15, 2020) (quoting *Chin*, 57 F. Supp. 3d at 1082–83). Such "assertions must be based on personal knowledge to show that employees are similarly situated." *Quay*, 2023 WL 4947459, at *3.

Once satisfied that the employees (or former employees) are similarly situated and that potential plaintiffs would be interested in joining the lawsuit, the case is conditionally certified for the purposes of notification and discovery. *Dege*, 2007 WL 586787, at *1. At that point, "[c]ourts are encouraged to 'monitor[ ] preparation and distribution of the notice' to 'ensure that it is timely, accurate, and informative.'" *Quay*, 2023 WL 4947459, at *3 (quoting *Hoffmann-La Roche*, 493 U.S. at 172) (alteration in original).

Only after notice is given and discovery closes does the Court then engage in the second, stricter step of the analysis to consider "the extent and consequences of disparate factual and employment settings of the individual plaintiffs, the various defenses available to the defendant that appear to be individual to each plaintiff, and other fairness and procedural considerations." *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181,

1186 (D. Minn. 2007) (quoting *Dege*, 2007 WL 586787, at *1); *Frank*, 2005 WL 2240336, at *2.

## I. PLAINTIFFS HAVE MET THEIR BURDEN FOR CONDITIONAL CERTIFICATION.

Plaintiffs argue that they and the putative collective members are similarly situated because, as employees hired through the H-2A program to perform similar job duties, they were all victims of Boehnke Waste's common policies of misclassifying H-2A workers as exempt agricultural labor not eligible for overtime pay, and failing to pay them for their compensable travel time. They also claim that other individuals who are similarly situated to Plaintiffs are interested in joining the class.

As to their first claim about misclassification, Plaintiffs argue that their work was not properly classified as agricultural because Boehnke Waste operated independently from its clients' agricultural operations and the work its employees performed was not incident to or in conjunction with client farming. *See Bayside Enterprises, Inc. v. N.L.R.B.*, 429 U.S. 298, 299–300 (1977) ("The protections of the National Labor Relations Act extend only to 'employees.' Section 2(3) of the Act, 29 U.S.C. [§] 152(3) provides that the term 'employee' . . . shall not include any individual employed as an agricultural laborer . . . .") (cleaned up); *see also* 29 C.F.R. § 780.144 ("Generally, a practice performed in connection with farming operations is within the statutory language only if it constitutes an established part of agriculture, is subordinate to the farming operations involved, and does not amount to an independent business."). Plaintiffs claim this misclassification

10

resulted in a common failure to pay overtime despite Plaintiffs and the putative class regularly working more than 40 hours per week.

As to their second claim about compensable travel time, Plaintiffs argue that their travel time—between Boehnke Waste's Minnesota headquarters and several worksites scattered throughout Iowa, South Dakota, North Dakota, and Minnesota—was all compensable under the FLSA. *See, e.g.*, 29 C.F.R. § 785.38 ("Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked."); *id.* § 785.39 ("Travel away from home is clearly worktime when it cuts across the employee's workday."). Plaintiffs contend that despite the compensable nature of their travel for work, they were subject to Boehnke's common failure to pay for travel time.

And finally, as to some evidence that others will be interested in joining in this collective litigation, Plaintiffs argue that they have shown this by the three additional members who have joined the lawsuit during its first five months of litigation. (*See* Docs. 28-1 (Danie Johannes Smith and Abram Carl Meeding); 29 (Johannes Jacobus).)

Based on Plaintiffs' allegations and evidence, conditional certification is appropriate. In *Rios-Gutierrez v. Briggs Traditional Turf Farm, Inc.*, 585 F. Supp. 3d 1209 (W.D. Mo. 2022), a district court within this Circuit granted conditional certification on similar facts:

> The named Plaintiffs assert that they, like other members of the putative FLSA opt-in class, were foreign workers brought into the United States on H-2A visas for the stated purpose of performing agricultural work on Defendants' sod farms. . . . Plaintiffs allege that they were not paid overtime, as agricultural work is exempt from overtime requirements. 29

11

> U.S.C. § 213(a)(6). Plaintiffs allege, however, that instead of performing agricultural work, they were directed to perform landscaping work, and regularly worked for more than 40 hours in a week. Named Plaintiffs alleged that although they regularly worked more than 40 hours in a week, Defendants rarely paid overtime, violating 29 U.S.C. § 207(a). . . .
>
> Plaintiffs assert that Defendants had a policy of saying on the H-2A visa applications that their employees would be performing exempt agricultural work, and then directing those same employees to perform non-exempt work. Plaintiffs assert that this policy was applied equally to all foreign nationals working for Defendants who came to the United States on H-2A visas.

*Id.* at 1212-13. Courts have also granted conditional certification in several other cases with some similarities in this Circuit. *See, e.g.*, *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (granting conditional certification for H-2A workers subject to an alleged "policy or practice of neither paying for nor reimbursing the various visa, visa processing, recruitment, and travel expenses associated with accepting H-2A employment with P & H Forestry, LLC"); *Vallone*, 437 F. Supp. 3d at 688 (granting conditional certification for workers who alleged they were not paid for the time spent traveling to and from remote locations to their worksites).

These cases align with out of Circuit authority, too. *See, e.g.*, *Gonzalez-Rodriguez v. Gracia*, No. 5:21-cv-406 (BO), 2023 WL 2450170, at *5 (E.D.N.C. Feb. 6, 2023) (granting conditional certification for H-2A workers who alleged they were not reimbursed for visa-related expenses, including travel, and were not paid overtime wages owed); *Magana-Munoz v. W. Coast Berry Farms, LLC*, No. 5:20-cv-2087 (EJD), 2020 WL 3869188, at *6 (N.D. Cal. July 9, 2020) (granting conditional certification for workers who

alleged defendant failed to compensate its H-2A workers for visa-related expenses, meal periods, and travel time).

Plaintiffs here have presented a colorable basis for their claim that they were subject to the same unlawful policies by Boehnke Waste because they all claim they were misclassified based on the work they actually performed; were eligible to earn overtime pay for their regular work beyond 40 hours per week but received some or no overtime pay; and should have been compensated for travel time to, from, and between worksites and Boehnke Waste's headquarters. Additionally, Plaintiffs have established there is sufficient interest in the lawsuit from potential class members. On this front, "'there is no numerical baseline that plaintiffs must meet,' and 'whether a plaintiff has shown sufficient opt-in interest is necessarily a case-specific inquiry that will turn on case-specific facts.'" *Deutsch*, 2020 WL 7351556, at *10 (quoting *Wang v. Jessy Corp.*, No. 17-cv-5069 (JRT/HB), 2019 WL 3574553, at *5 (D. Minn. Aug. 6, 2019)). While "one or two interested persons usually seems not to be enough," the guiding principle is that the plaintiff's burden is not an onerous one. *Id.* (collecting cases). Here, there are four named Plaintiffs and the Court has received notices for three more members. Considering the communication challenges of locating individuals who may be spread across several states performing work as H-2A guestworkers, or who may have returned to their countries of origin outside of the United States, the fact that seven members of the collective already exist demonstrates sufficient interest to support conditional certification.

In their opposition memorandum, Defendants urge the Court to follow the framework adopted by a panel of the Fifth Circuit in *Swales v. KLLM Transp. Servs.,*

13

*L.L.C.*, 985 F.3d 430 (5th Cir. 2021)—which sets out a stricter standard for review of Plaintiffs' motion, more akin to the review a court typically conducts when determining whether a Rule 23 opt-out class ought to be certified (or, as the case may be, whether a conditionally-certified FLSA collective ought to be decertified). Defendants argue that a *Swales* analysis maximizes efficiency by conducting a rigorous review at the outset of the notice process, and ensures that notice is only given to those who are most likely to be similarly situated, best fulfilling the intent of the FLSA. At the hearing on this matter, counsel for Defendants acknowledged that *Swales* has not been adopted by any court in this District. In fact, "[a] review of the case law since *Swales* . . . 'reveals nearly universal negative treatment of *Swales* by other district courts in this Circuit.'" *Babbitt*, 2023 WL 2540450, at *4 (quoting *Peck v. Mercy Health*, No. 21-cv-834 (RLW), 2023 WL 1795421, at *3 (E.D. Mo. Feb. 7, 2023)) (collecting cases). Defendants suggest that *Swales* honors the discretion district courts have in determining how FLSA actions may best move forward by focusing on important certification questions early, since those may be dispositive later. But a closer read of *Swales* demonstrates that the case is not at all about flexibility of district-court process; it *requires* inflexibility in insisting courts "rigorously enforce" the FLSA's similarity requirement "at the outset of the litigation." *Swales*, 985 F.3d at 443. It is difficult to understand how such a task could be undertaken before discovery occurs, although that appears to be the framework *Swales* endorses. Such a rigid approach is not consistent with *Hoffman-LaRoche* itself, as it "undermines the discretion" afforded to district courts in FLSA certification proceedings. *Murphy*, 2022 WL 378142, at *11 n.4. This Court finds *Swales* unpersuasive and will not adopt it.

Defendants also argue that even under the more lenient two-step *Lusardi* test which is standard in this District and Circuit, the evidence Plaintiffs present does not establish common policies that violated state and federal law. But Plaintiffs' evidence, based on limited discovery, plausibly supports their claims that they were classified as exempt from overtime protections under federal and state law, regularly worked more than 40 hours a week, regularly traveled as a part of their job duties, and were not compensated for overtime or travel time. This is sufficient to support conditional certification. *Hoffman-LaRoche*, 493 U.S. at 485–86.

Finally, Defendants assert that conditional certification is inappropriate because some Plaintiffs are not adequate representatives of the collective,[3] and because Defendants believe they will ultimately prevail on the merits. It is true that the leniency of this conditional-certification analysis does not mean that a court should "overlook those facts which pointedly reflect that a collective action would be improper." *Thompson v. Speedway SuperAmerica LLC*, No. 8-cv-1107 (PJS/RLE), 2009 WL 130069, at *10 (D. Minn. Jan. 20, 2009). Yet the issues that Defendants rely on involve counter-allegations and averments that appear to have little to do with whether Plaintiffs were misclassified. Those matters, as well as a more searching inquiry into the merits, are reserved for consideration should Defendants move to decertify the collective after discovery is complete. *See Chin*, 57 F. Supp. 3d at 1082; *Burch*, 500 F. Supp. 2d at 1186.

---

[3] Specifically, Defendants allege that two named Plaintiffs "have stolen hours" by not performing work while clocked in. (Doc. 26 at 23.)

15

## II. THE COURT GRANTS PLAINTIFFS' REQUEST FOR CONTACT INFORMATION AND ADOPTS PLAINTIFFS' PROPOSED NOTICE WITH REVISIONS.[4]

Courts considering FLSA matters have discretion to facilitate notice to potential plaintiffs so they can make informed and timely decisions about whether to participate in the suit. *Hoffman-La Roche*, 493 U.S. at 169-72. Because defendant-employers often have demographic information for their current and former employers, it is common for courts to order production of such information to plaintiff's counsel to facilitate notice. *See, e.g.*, *Chapman v. Elec. Builders, Inc.*, No. 20-cv-1087 (PJS/LIB), 2020 WL 12814165, at *9 (D. Minn. Oct. 15, 2020).

Plaintiffs assert that Boehnke Waste is required, by virtue of its participation in the H-2A visa program, to maintain its employees' names, addresses, and telephone numbers. That is correct. *See* 20 C.F.R. § 655.122(j)(i) (requiring employer to maintain "worker's permanent address, and, when available, the worker's permanent email address and phone number(s)"). As such, there appears to be little burden on Defendants to provide this information.

The H-2A work performed by Plaintiffs and the putative class is, by its nature, transient: it is performed over a relatively short period of time by noncitizens. As such, the Court agrees with Plaintiffs that providing notice by U.S. Mail may not be effective.

---

[4] In their lengthy opposition memorandum, Defendants devoted a single unsubstantive paragraph to the form and distribution of Plaintiffs' proposed notice, asking the Court to delay notice until the parties meet and confer (again, *see* Doc. 34 (Meet and Confer Statement)). The point of conditional certification is to provide timely notice to affected workers. *Genesis Healthcare*, 569 U.S. at 75. The Court will not further delay notice, and instead has undertaken its own review of the form and protocol proposed by Plaintiffs.

"Electronic communication is commonly utilized and is an appropriate, convenient, and efficient manner of communication with potential plaintiffs in FLSA actions." *Middleton v. Hempstead Cnty., Ark.*, No. 4:18-cv-4112 (SOH), 2019 WL 3948106, at *4 (W.D. Ark. Aug. 21, 2019). Given the circumstances of this case, including evidence that Boehnke Waste communicated with workers via telephone, text-messaging services, and email, the Court finds that electronic notice is appropriate here, and grants Plaintiffs' request to send notice via text message (regardless of whether that be by SMS or an alternative messaging service such as WhatsApp) and email, as well as by U.S. Mail, as set forth further below.

The Court has also considered how putative members may demonstrate consent to join the action. FLSA consent must generally be in writing. 29 U.S.C. § 216. However, consent may be made by electronic submission and with electronic signatures, provided there are no concerns about the integrity of the consent. *See, e.g.*, *Abdul-Ahad v. Associated Courier Inc.*, No. 20-cv-607 (HB), 2021 WL 5995016, at *3 (D. Minn. March 26, 2021) (permitting class-settlement releases to be signed "either in hard copy (originals not required) or using docusign or comparable software"); *Fritz v. Corizon Health, Inc.*, No. 19-cv-3365 (SRB), 2020 WL 6877737, at *5-6 (W.D. Mo. Nov. 23, 2020) (approving notice indicating FLSA opt-in plaintiffs could "sign and return by Docusign or other electronic signature method," and allowing consent forms to be executed "via Docusign, a signed PDF document that is emailed, a faxed signature, or a jotform.com document") (quotation omitted); *Mahoney v. CommonSpirit Health*, No. 8:21-cv-23 (JFB), 2021 WL 5907929, at *6 (D. Neb. Dec. 14, 2021) (approving use of internet links to FLSA electronic notices and consents to join and use of Docusign for facilitating collection and submission

17

of consents). Particularly given the realities of life for the putative collective members, including the potential for extended periods of H-2A work away from their permanent residences, the Court finds that electronic consent is appropriate here, whether made via DocuSign or another reliable means; as well as consent demonstrated through signed forms transmitted via fax, email, or traditional, U.S. Mail.

Finally, the Court considers the form of notice provided by Plaintiffs. Plaintiffs proposed two notices: (1) a long form notice of action with attached consent form (Doc. 34-4) ("Long Form Notice"), and (2) a short form notice that would be sent via text message with a link to the Long Form Notice (Doc. 34-5) ("Text Notice"). Each notice is generally appropriate,[5] but the Long Form Notice must be amended slightly. In the Long Form Notice, Plaintiffs propose a 180-day opt-in period. (*See* Doc. 34-4 at 2 ("Option 1: RETURN SIGNED FORM").) In their memorandum, Plaintiffs suggest this lengthy period is necessary because putative class members might be hard to reach and might have a limited ability to communicate. The Court has addressed those concerns through adopting a notice-and-consent protocol that allows electronic communications though common

---

[5] The Court notes that each proposed notice generically suggests the relevant claim period is "any time between 2021 and 2024." (Docs. 34-4 at 1; 34-5 at 1.) That is incorrect. While FLSA claims such as those pled here may have a 3-year statute of limitations, 29 U.S.C. § 255(a), that lookback period does not likely encompass all of 2021. *See Mahoney*, 2021 WL 5907929, at *4 ("The notice period under the FLSA generally should be measured from the date of the court's order granting the motion for conditional certification, not from the date the complaint was filed."). Nonetheless, statute-of-limitations challenges to any opt-in plaintiffs' claims "can be addressed subsequent to the completion of discovery during the second phase of the collective action certification process." *Anglada v. Linens 'N Things, Inc.*, No. 6-cv-12901 (CM/LMS), 2007 WL 1552511, at *9 n.5 (S.D.N.Y. Apr. 26, 2007), *R. and R. adopted*, (S.D.N.Y. May 22, 2007).

means. With those adjustments, a 180-day opt-in period is too long. Accordingly the Long Form Notice must be amended to indicate that the signed consent form must be returned 120 days from the date of mailing notice. Additionally, the Long Form Notice should be amended to indicate in the box following "Option 1: RETURN SIGNED FORM" that the consent form may be submitted electronically through DocuSign or other reliable means,[6] as well as provide instructions for how to access such means. This amendment shall be added to Page two of the proposed Consent Form (Doc. 34-4 at 4) as well.

## ORDER

Based on all of the files, records, and proceedings above, **IT IS ORDERED** that:

1. Plaintiffs' Motion to Certify Conditional Class (Doc. 30) is **GRANTED**, and this action is now a conditional collective action under the FLSA, 29 U.S.C. § 216(b) for all H-2A workers employed by Boehnke Waste Handling, LLC, at any time from 2021 through 2024;

2. Plaintiffs' Proposed Notice and Consent Forms are **ADOPTED** with the amendments referenced above, for distribution to the putative class members as defined above;

3. Plaintiffs, through counsel, are directed to distribute the approved Notices to the putative class members via U.S. Mail and text message (including, but not limited to, utilizing SMS and WhatsApp messaging services) and, if class members fail to respond to such notice within 30 days, follow up notice via email;

4. Defendants are directed to post the approved Long Form Notice in all common areas in all housing locations currently occupied by its H-2A workers within 14 days of this Order;

5. Defendants are directed to produce to Plaintiffs' counsel, within 14 days of this Order, the names, dates of employment, last-known addresses, email addresses,

---

[6] At the hearing on this matter, Plaintiffs' counsel indicated that his firm used DocuSign but was unclear whether it could be utilized for consent forms in this matter.

19

   and any known telephone or messaging-service numbers for putative class members; and

6.  Putative class members' consent forms must be filed with the Court no later than 120 days from the date of this Order.

Date: October 3, 2024            *s/Douglas L. Micko*
                      DOUGLAS L. MICKO
                      United States Magistrate Judge